UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Case No.: 6:23-CR-109-CEM-EJK |
| | : | |
| | : | |
| MICHAEL REMALEY | : | |
| _____ | : | |

## DEFENDANT MICHAEL REMALEY'S SENTENCING MEMORANDUM

COMES NOW, the Defendant, MICHAEL REMALEY, by and through his undersigned counsel, and files this his sentencing memorandum and in support states as follows:

Introduction

On Tuesday, October17, 2023 at 10:00 am, the Defendant will stand in judgment before this Honorable Court for the crimes he committed - and more importantly for the crimes he has accepted full responsibility *for* committing.

The Defendant nor his counsel will minimize the negative effect the Defendant's criminal conduct has had and will continue to have upon, *most importantly*, his victims, their families, the community in which he lives, the judicial system, state and federal law enforcement agencies, his family, his friends, and himself.

The Defendant will allocate and when he does, he will blame only himself. Quite frankly, the Defendant is humiliated and ashamed. Sentencing will most certainly be a difficult day for the Defendant, his family, and his friends. However, a sentencing is not meant to punish alone. The Defendant offers this sentencing memorandum, and its exhibits, in mitigation of his criminal conduct to assist this Honorable Court in fully assessing him so that it may reach a sentence that is sufficient but not greater than necessary under law.

## I.      Presentence Investigation Report

Undersigned counsel and the Defendant do not object to the factual accuracy of the presentence investigation report.

Undersigned counsel and the Defendant made several objections to the legal accuracy of the presentence investigation report. These legal objections are fleshed out fully in the addendum to the final presentence investigation report. There is no additional written argument necessary on these legal objections.

## II.     Sentencing Process

In order to arrive at a sentence that is sufficient but not greater than necessary, and to comply with the purposes set forth in paragraph two of Title 18 United States Code Section 3553(a), the Defendant understands this Honorable Court will first calculate the Defendant's federal sentencing guideline sentence range, next consider any departures based on the criteria set forth in the federal

sentencing guidelines from Sections 5K1.1 to 5K3.1, and, finally, consider whether the sentence imposed should be different from either the federal sentencing guideline sentence or the departure sentence (if any), after considering the factors set forth in 18 United States Code Section 3553(a).

- The advisory federal sentencing guideline range as calculated by United States Probation is accurate.

- The parties do not expect a downward departure motion to be filed by the government.

- In this submission, the Defendant posits there is a basis for a downward variance, discussed in detail in the next section.

## III.   Title 18 United States Code Section 3553(a)

Prior to the United States Supreme Court decisions in *United States v. Booker*, 543 U.S. 220, 245-67 (2005), *Rita v. United States*, 127 S.Ct. 2456 (2007), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38, 53 (2007), the federal sentencing guidelines were mandatory, not advisory, on a federal district court judge. As we all know, because of the above cases, the federal sentencing guidelines are now advisory in nature and equal in weight to the Title 18 United States Code 3553(a) factors.

This Honorable Court is well aware of this law. The Defendant will move on.

The Title 18 United States Code Section 3553(a) factors that a district court judge must take into equal consideration to the federal sentencing guidelines are as follows:

- The nature and circumstances of the offense and the history and characteristics of the defendant; 18 United States Code Section 3553(a)(1); and

- The need for the sentence imposed; 18 United States Code Section 3553(a)(2); and

  - to reflect the seriousness of the offense, to promote respect for the law,   and to provide just punishment for the offense.

  - to afford adequate deterrence to criminal conduct.

  - to protect the public from further crimes of the defendant.

  - to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

- The kinds of sentences available; 18 United States Code Section 3553(a)(3); and

- The need to avoid unwarranted disparity among defendants with similar records and similar crimes; 18 United States Code Section 3553(a)(6); and

- The need to provide restitution to any victims of the offense. 18 United States Code Section 3553(a)(7).

There is no doubt the Defendant committed the crimes set forth in his presentence investigation report. As a result, the Defendant knows, and most importantly accepts, that now is the time that he must be punished for his criminal actions. But as this Honorable Court certainly knows better than anyone, a federal sentencing is not designed to punish alone. If so, there would be no need for a presentence investigation report, sentencing submissions by the parties, and the sentencing hearing itself.[1] Instead, it would be like 2004 and before – quick, painless, and expedient - for everyone but the Defendant.

But the Defendant, like all other federal defendants waiting to see how much of their lives will be taken from them at sentencing, is exactly the person for whom an individualized sentencing is designed. The Defendant is more than just his criminal actions in this case. His story deserves to be heard and considered. It is the Defendant's belief that a guideline imprisonment sentence is therefore unreasonable.

The Defendant offers the following in support of his request for a downward variance.

A.     Mitigation Variance Analysis

[1] Undersigned counsel is aware this Honorable Court is well-versed in this area of the law and will now move forward in this sentencing memorandum to an application of fact and law analysis as a result.

This Honorable Court must begin its sentencing analysis at the advisory federal sentencing guideline imprisonment range, but it should not end its sentencing analysis at the advisory federal sentencing guideline imprisonment range, because doing so would result in a greater than necessary sentence under the law. After considering the factors set forth under Title 18 United States Code Section 3553(a), this Honorable Court should vary downward.

Here are the relevant Section 3553(a) mitigating factors this Honorable Court should consider:

**This Honorable Court should consider the
mitigating history and characteristics of the Defendant.
18 United States Code Section 3553(a)(1).**

**This Honorable Court should consider the mitigating need for the sentence imposed to provide the Defendant with needed educational or vocational training, medical care, or other treatment in the most effective manner.
18 United States Code Section 3553(a)(2).**

*Personal and Family History*

Michael Anthony Remaley was born on August 31, 2001, in Willingboro, New Jersey, to Lisa and John Remaley. Growing up, Michael had an older brother, and his family always lived in affluent, upscale neighborhoods. Although Michael's parents argued frequently over finances, they maintained a harmonious atmosphere in their home. Importantly, they never abused Michael or engaged in substance abuse in his presence. However, the family moved across four different

states during Michael's childhood, causing upheavals and disruptions in his life with each move.

Michael's parents provided him with an excellent upbringing, meeting his basic needs. He had a strong bond with his family and never ran away from home. Michael characterized his family as "close to some extent," acknowledging occasional rifts. He and his brother experienced typical sibling rivalry, and Michael sometimes felt that his parents did not fully understand his concerns, particularly related to anxiety and depression. He believed they lacked "respect" or empathy for his situation. Michael also perceived favoritism from his father toward his brother, which strained their relationship, though it has recently improved. Michael regards his parents as caring and protective. They express genuine concern for his future.

When Michael was seventeen, he faced a challenging relationship with a mentally abusive girlfriend, also a victim in this case, who subjected him to threats and stalking. This troubling period caused his parents to be distressed and his brother to distance himself, leading to physical fights between the siblings due to the stress.

Michael's parents occasionally yell at him for what he perceives to be trivial reasons, a behavior he considers unnecessary and possibly a form of mental abuse, albeit on a mild scale. When he was younger, his parents used non-excessive

corporal punishment, while they now employ punishments such as confiscating his phone or computer.

<u>Analysis</u>

Michael's family background presents a mix of positive and negative aspects. The frequent relocations during his childhood had a disruptive impact on his life, although his parents' efforts to maintain harmony and provide for his needs were commendable. However, the financial arguments in the household introduced some stress and instability.

Michael's perception of a lack of understanding regarding his mental health issues within the family raises concerns. This gap in communication and empathy contribute to his sense of frustration and isolation. Additionally, the abusive relationship he endured at seventeen had significant negative consequences on his family dynamics, causing distress and straining his relationship with his brother.

The occasional yelling and punitive measures taken by his parents, while not excessive, are areas where communication and conflict resolution can be improved in the Remaley family.

On a positive note, Michael's family history of hard work and success in his grandparents and cousins instilled strong values in him. These influences encouraged him to make responsible choice, although his accepts responsibility for the irresponsible choices he made in connection with this case.

Michael's family members continue to play crucial roles in his life. Their influence can be a source of support and guidance as he navigates the challenges he now faces.

*Educational History*

Michael graduated from Windemere High School of Windemere, Florida, in 2020, where he demonstrated academic dedication despite struggling with math, possibly due to attention deficit disorder. He was never held back a grade, and he sought help when needed, demonstrating a commitment to learning.

Michael's involvement in football as an extracurricular activity shows his interest in sports. However, his educational progress was marred by several troubling events. During his time in South Carolina, he was in a fist fight where he was physically harmed, an incident that impacted his overall well-being and focus on education. In Florida, Michael faced severe bullying, threats, and harassment related to his girlfriend and her associates. This environment led to his suspension from high school, and he questioned the fairness of this punishment. The advent of Covid protocols allowed him to attend school remotely, offering temporary relief form the bullying.

In 2020 and 2021, Michael pursued an online program through Valencia College to complete prerequisites. His determination to continue his education led

him to transfer to the Florida Institute of Technology, where he embarked on a meteorology program and resided in the dormitory when school was in session. Unfortunately, his academic journey was disrupted when he had to withdraw from college to focus on his legal case.

Despite obstacles, Michael aspires to return to college once his case is resolved. He also expresses an interest in pursuing training and education in the HVAC field during his time in incarceration, showing his determination to continue learning and bettering himself.

### Analysis

Michael's educational history highlights his determination in the face of adversity, and it suggests that he has the potential to overcome obstacles and achieve his educational and career goals in the future.

### Physical Health

Michael describes himself as fairly athletic and fairly healthy. He had high blood pressure at one time, but he chose to manage it without medication, opting instead for a regimen of exercise, a wholesome diet, and a healthy lifestyle. This proactive approach to his hypertension speaks to his commitment to maintaining his physical well-being.

Another health issue that plagues Michael is migraine headaches. These headaches can be debilitating and can significantly impact one's quality of life.

Michael has sought medical treatment for these migraines, but the only therapy that has shown some success in alleviating his symptoms is migraine aspirin. While this provides some relief, prolonged use of this medication can have side effects and may not address the root causes of the headaches.

Michael reports no other health problems, no physical limitations, and no allergies.

### *Analysis*

Michael's commitment to managing his high blood pressure through exercise and lifestyle changes is commendable, but his blood pressure must be monitored closely going forward. His struggle with migraine headaches is a chronic condition that requires long-term solutions beyond pain relief. Michael's dedication to his health and lack of other significant health issues bodes well for his continued well-being with proper guidance and medical care.

### *Mental Health*

Michael's mental health profile has been marked by various challenges and encounters with the mental health system. His history began with a reported diagnosis of attention deficit disorder during his childhood, although he never received medication for it due to his parents' beliefs that he did not need it to function in school.

In December 2019, at the age of nineteen, Michael faced a serious mental health crisis when he was involuntarily committed (Baker Acted) to Central Florida Behavioral Hospital after making suicidal statements to a friend. These statements were related to the stress of an ongoing situation with his then-girlfriend and a restraining order she had obtained against him. After twelve hours of observation and evaluation, Michael was released without medication or follow-up services.

Subsequently, Michael participated in weekly outpatient individual counseling with Charles Wise, a licensed mental health counselor. The focus of this treatment was on managing depression, addressing suicidal thoughts, resolving issues linked to the restraining order, and improving his relationship with his parents. Michael found these sessions to be beneficial and gained insights into his situation. Unfortunately, he had to discontinue this treatment after six sessions due to insurance issues.

Despite stopping therapy, Michael continued to struggle with nightmares related to the circumstances of the restraining order and his relationship problems with his mother and ex-girlfriend. In 2021, he returned to Mr. Wise for an additional treatment session, but he could not continue treatment due to scheduling issues and insurance challenges.

In 2022, Michael underwent a case-related mental health evaluation, which recommended mental health treatment. Following this recommendation, Michael began treatment with Heart Work and The Family Tree, both located in Longwood, Florida. He attended treatment until May 2023, but financial constraints forced him to discontinue this treatment. During his time at Heart Work, a counselor recommended that Michael see a primary care physician for ADD medication. His primary care physician prescribed methylphenidate, which Michael believes helps him focus and control impulsivity.

Michael's history includes admitted to approximately ten suicide attempts between 2019 and 2021, primarily stemming from issues related to his ex-girlfriend and the restraining order. Additionally, he reported a history of self-mutilation, including one instance of cutting his skin as a means to relieve stress.

Michael underwent a psychological assessment in 2022 at Specialized Treatment and Assessment Resources in Cocoa, Florida, and the psychologist there, Dr. Eric Imhof, diagnosed him with persistent depressive disorder, late onset, with intermittent major depressed mood, and post-traumatic stress disorder.

In July 2022, Michael began treatment with Dr. Toni Furbringer, meeting twice monthly with Dr. Furbringer and twice monthly with an associate. Michael's sessions with the associate focused on work and relationships, while his work with Dr. Furbringer were focused on preventative strategies. Michael developed insight

into his offense behavior and addressed his poor decision making, particularly as it relates to interpersonal and sexual boundaries.

## Analysis

Michael's mental health history is characterized by an interplay of factors. His initial diagnosis of ADD, combined with the lack of medication, may have contributed to difficulties in managing his symptoms and emotions. The significant event in December 2019, where he was involuntarily committed due to suicidal statements, indicates the severity of his mental health crisis at that time.

Engaging in therapy with Dr. Wise was a positive step, as it helped Michael gain insight into his depression, suicidal thoughts, and interpersonal issues. However, the discontinuation of treatment due to insurances issues left him without consistent support, potentially contributing to the persistence of nightmares and unresolved issues.

Michael's reported suicide attempts and self-mutilation are concerning indicators of his mental health struggles. These behaviors underline the urgency of comprehensive mental health treatment and support for Michael. The prescription of methylphenidate for his ADD suggests a potential avenue for symptom management, but it should be part of a broader treatment plan.

Financial constraints have been a recurring barrier to accessing consistent mental health care, which highlights the need for improved access to affordable

mental health services. Michael's desire to continue receiving mental health treatment indicates his willingness to address his mental health concerns and work towards recovery, emphasizing the importance of accessible and ongoing support for people such as Michael.

*Sexual Abuse*

Michael's troubling sexual abuse history has left a significant impact on his emotional well-being. His first encounter with sexual abuse happened within the confines of his own family, perpetrated by his older brother. Unfortunately, this initial incident remained unreported, suggesting a lack of awareness or support at that time.

The second episode of abuse, occurring when Michael was 17, involved his girlfriend at the time. This situation was emotionally manipulative, with his girlfriend resorting to threats of self-harm if he did not comply with her demands. Michael recounted how she coerced him into sending explicit images to her, which was behavior that he deemed out of character for himself.

Analysis

Michael's experiences illustrate the distressing consequences of sexual abuse, even when it occurs within relationships that should provide love and support. Such abuse leads to guilt and self-blame and mental health challenges.

Michael's history of sexual abuse underscores the importance of acknowledging the impact such experiences can have on an individual's mental and emotional well-being. Michael's acknowledgement of the abuse is a good first step, but support and mental health treatment are essential steps toward healing and recovery.

*Work History*

Michael's first job was at McDonald's in 2020. Though it was a short-lived job, it provided him with fundamental work experience, including customer service and team collaboration skills.

In 2021 and 2022, Michael ventured into the digital world by running a weather-related YouTube channel. His passion for storm chasing and weather phenomena led him to create engaging content, including videos of hurricanes. This unique pursuit not only satisfied his passion for meteorology but also generated a modest income. This experience demonstrates his ability to leverage his interests and skills for financial gain.

In 2022, Michael jointed Sun Bright, a solar installation company in Orlando, Florida, as a field marketer. His primary responsibility was setting appointments for solar installations. This role required communication skills and a basic understanding of the solar industry. Michael eventually left this position in pursuit of what he deemed a better opportunity at One Stop Total Solutions, a

competing solar installation company in Orlando, where he worked for approximately one month. This job allowed him to build on his experience in the solar industry.

Michael is on pretrial release at this time. He is unemployed, but he is seeking employment.

<u>Analysis</u>

Michael's employment history reveals several key strengths and characteristics: adaptability, entrepreneurial spirit, commitment to personal growth, industry experience, and passion driven. Michael's employment experiences, while limited, have contributed to a foundation of potential future career opportunities.

*Alcohol and Substance Use*

Michael drank alcohol for the first time when he was about fourteen years old. Over the years, this introduction to alcohol evolved into a moderate recreational habit. He sometimes has more than he set out to drink and occasionally feels guilty over his drinking and regrets things he said or did while drinking. Michael tried marijuana once when he was 21, but he did not like it. He has never tried any other illegal drugs.

<u>Analysis</u>

Michael is not sure if there is a connection between substance use and his current case. The fact that Michael sometimes drinks more than he intended

suggests the need for self-reflection to better manage and understand his relationship with alcohol. This issue should be addressed to ensure it does not have a detrimental impact on his life in the long run.

*Personal Accomplishments and Future Plans*

Michael is very proud of graduating from high school and gaining admission into college. He likes that he tries to help other people in need. Michael is delighted about the prospect of success with his weather-related social media platforms. He is proud that he earns money by selling his weather videos. He recently earned $900 for a video of Hurricane Ida. Michael would like to join the Air Force and specialize in hurricane reconnaissance. He very much wants to get married and have a family.

United States Sentencing Guideline Section 2G2.2(b)(6).

United States Probation properly increased the Defendant's base offense level by two levels because his offense involved the use of a computer pursuant to United States Sentencing Guideline Section 2G2.2(b)(6). The reality is, while this is scored properly, the days of possessing, receiving, purchasing, or trading pornography or child pornography via backrooms, hidden areas or secret societies are over. It is all on the internet. If you want it, it is there - after only a few clicks on a keyboard and movements of a mouse.

Computers, be it a smart watch, a smart phone, a tablet, a laptop, a desktop, or something that undersigned counsel is not yet aware of, dominate every facet of modern human life. It is nearly impossible to conduct personal or professional business without some sort of a computer device. Whether it is conducting court in a pandemic, obtaining the latest news from the Tampa Bay Times, exchanging an email with a friend or colleague, or simply checking the latest sports score, a computer device has replaced any other means of doing any of the above in nearly every instance.

The same unfortunately is true for committing criminal conduct. While this is not an excuse for the criminal conduct, it is the reality. As a result, no longer should a federal defendant receive an increase for using a computer when in most, if not all, instances, but especially the crimes for which the Defendant in this case pled guilty, it is necessary to commit the criminal conduct at issue.

The "use of computer" enhancement under United States Sentencing Guidelines Section 2G2.2(b)(6) was promulgated during an earlier era of computer and Internet technologies when certain enhancements were intended to apply only in atypical or aggravated cases. But because of today's computer and Internet technologies, including peer-to-peer file-sharing, the Section 2G2.2(b)(6) enhancement applies to virtually every "typical" federal defendant, notwithstanding the fact that a wide range of defendants in terms of culpability and

dangerousness exists. Because this enhancement, and other enhancements in Section 2G2.2, apply to almost all "typical" defendants, Section 2G2.2 does not effectively distinguish among federal defendants in terms of their relative culpability and dangerousness, which is a fundamental goal of the sentencing guidelines system.

## IV.    Sentencing Position

Once this Honorable Court calculates the Defendant's final offense level under the advisory federal sentencing guidelines and considers the factors set forth in 18 United States Code Section 3553(a), the Defendant respectfully submits a prison sentence within the current advisory federal sentencing guideline range is greater than necessary.

However, the Defendant understands and accepts that he does not have the final say on the issue of incarceration. Because he pled guilty, the Defendant understands and accepts that the final decision regarding his fate rests with this Honorable Court. All the Defendant can do is make his case in this written submission and again in open court at his sentencing hearing.

The Defendant respectfully requests this Honorable Court grant a downward variance based upon the information in this sentencing memorandum and the presentence investigation report.

## <u>CONCLUSION</u>

WHEREFORE, the Defendant, MICHAEL REMALEY, by and through her undersigned counsel respectfully requests this Honorable Court will grant the requested relief/and or any other relief deemed necessary.

Respectfully submitted,

By: /s/ Mark J. O'Brien
Mark J. O'Brien, Esquire
Florida Bar No.: 0160210
511 West Bay Street
Suite 330
Tampa, Florida 33606
T:      (813) 228-6989
E:      mjo@markjobrien.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on October 11, 2023 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will then send notice of electronic filing to all counsel of record.

By: /s/ Mark J. O'Brien
Mark J. O'Brien